UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION
GLORIA ARTESIA PENN,

    *Debtors-Appellant*,

v.

MARY K. VIEGELAHN, Standing
Chapter 13 Trustee,

    *Appellee*.

Civil No. 5:18-CV-354-OLG

## MEMORANDUM OPINION AND ORDER

Appellant appeals two orders entered by the Bankruptcy Court: an Order entered on April 5, 2018, denying her Motion for an Order Allowing Debtor to Retain 2017 Tax Refund; and an Order entered on April 20, 2018, denying confirmation of her proposed plan and dismissing the case. The Court finds that the orders of the Bankruptcy Court should be AFFIRMED.[1]

### Background

In February 2018, Appellant filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, and subsequently filed a Schedule of Assets and Liabilities, Schedules of Current Income and Expenses, a Statement of Financial Affairs, a Form 122C-1 ("Means Test"), pay advices, federal tax returns, and a Chapter 13 Plan. Docket no. 7 at 7-8. Plaintiff's filings listed real property described as "918 Potomac, San Antonio, TX 78202" (the Potomac property) with a current value of $44,870.00, and disclosed personal property described as a "2017 Tax Refund" with a current value of $5,832.00. Docket nos. 6 at 7-9; 7 at 8-9. Appellant later submitted an amended plan which, like the initial plan, included a nonstandard provision in

---

[1] The Court also finds that Appellee's Motion to Strike Late Filed Reply Brief of Appellant (docket no. 11) should be DENIED and that Appellant's Nunc Pro Tunc Motion for Extension of Time to File Reply Brief (docket no. 13) should be DENIED AS MOOT.
1 of 7

Section 8 providing that "Debtor hereby reserves the right to file relevant motion to retain tax refund should a special need arise, to the extent said potential refund is not disposable income." Docket nos. 6 at 9; 7 at 11.

Appellee asserted several objections to the Plan, including an objection on the basis of the nonstandard provision in Section 8. Docket nos. 6 at 10; 7 at 11. Prior to the confirmation hearing, Appellant filed a Motion for an Order Allowing Debtor to Retain 2017 Tax Refund and sought an expedited hearing on the motion. Docket nos. 6 at 10; 7 at 13. Appellant argued that she should be permitted to use the tax refund to make certain repairs to the Potomac property that would allow it to become habitable and insurable, which would in turn allow her to either derive rental income from the property or reside there herself and eliminate her monthly rent payment. Docket no. 6 at 10. Appellee opposed the motion on several grounds, including that treatment of the tax refund should be governed by Section 4.1 of the Form Plan, under which any tax refund amount in excess of $2,000 should be turned over. Docket no. 7 at 13. Appellee argued that the proposed plan should not be confirmed because the nonstandard provision proposing retention of the full amount of the tax refund contradicted Section 4.1 of the District Form Chapter 13 Plan. Docket nos. 6 at 10; 7 at 11

The Bankruptcy Court set the Motion to Retain and plan confirmation for a hearing that took place on April 5, 2018. Docket nos. 6 at 11; 7 at 13-14. The Bankruptcy Court began by considering the Motion to Retain. Docket no. 4-3 at 8-9. After hearing arguments from the parties regarding the Motion to Retain and the proposed use of the tax refund to make repairs to the Potomac property, the Bankruptcy Court presented Appellant with several options: a possible plan modification that would allocate a greater monthly amount for home improvements; a dismissal of the case in order to permit Appellant to use her tax refund as she saw fit, with the understanding that Appellant could re-file in the event that a foreclosure process were initiated

for the Potomac property; or conversion of her petition to a Chapter 7 petition. Docket no. 4-3 at 34-35, 36-37. The Bankruptcy Court made clear that Appellant's Motion to Retain would not be granted and that a proposed plan that allowed her to retain the full tax refund amount would not be confirmed, advising her that "one of the options is not using the tax refund here . . . we can't just say . . . just take the tax refund . . . that's not the way we're set up on our plan." *Id.* at 35. With the understanding that the motion to retain would be denied and that the plan would not be confirmed as proposed, the Bankruptcy Court suggested to reset the hearing to the following month to allow Appellant time to consider her options, but after a brief recess, Appellant requested that confirmation be denied and that the case be dismissed. Docket no. 4-3 at 40-41. After the dismissal, Appellant requested entry of an order denying the Motion to Retain for the purpose of undertaking an appeal. Docket no. 4-3 at 41. The Bankruptcy Court expressed its view the motion was moot upon dismissal of the case, but nonetheless agreed to the entry of an Order denying the Motion to Retain. Docket nos. 4-3 at 41-42; 4-2 at 251-57.

On appeal, appellant argues that the nonstandard provision in Section 8 of the proposed plan was permitted under 11 U.S.C. § 1322(b)(11) and Federal Rules of Bankruptcy Procedure 3015(c) and 3015.1, and that by disallowing it on the basis that it deviated from the local form plan, the Bankruptcy Court erroneously permitted the local plan to circumscribe the relief available under the Bankruptcy Code. Docket no. 6 at 11. In response, Appellee first argues that Appellant's arguments were rendered moot by the dismissal, at Appellant's request, of her Chapter 13 case. Docket no. 7 at 18. Appellee further argues that the Bankruptcy Court did not err in denying the Motion to Retain because the Local Plan, in requiring that all federal tax refunds in excess of $2,000.00 be turned over to the bankruptcy estate, is consistent with the Bankruptcy Code. Docket no. 7 at 19.

## Jurisdiction and Standard of Review

This Court has jurisdiction to hear appeals from final judgments, orders and decrees entered in proceedings before the United States Bankruptcy Court for the Western District of Texas. 28 U.S.C. § 158(a). Appealable orders of a bankruptcy court include those by which "confirmation is denied and the case is dismissed as a result[.]" *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (noting that finality exists in this context in part because "[d]ismissal lifts the automatic stay . . . exposing the debtor to creditors' legal actions and collection efforts."). Appellee argues that the agreed dismissal of the case "occurred prior to the hearing on confirmation of the Plan" and that the Court's dismissal of the case at Appellant's request rendered moot both the controversy regarding the nonstandard plan provision and Appellee's other objections to plan confirmation. Docket no. 7 at 23. However, the Bankruptcy Court premised its suggestion that Appellant request dismissal of the case upon a determination that Appellant's proposed plan was not confirmable. Docket no. 3-3 at 35-36. It was in this context that the Bankruptcy Court entered an order by which confirmation was denied and the case was dismissed. Docket no. 3-2 at 165. The transcript of the hearing makes clear that the Court reached a conclusion regarding the plan's confirmability, and that Appellant disputed the validity of this conclusion and intended to seek appellate review of it. Docket no. 3-3 at 38, 40.

On direct appeal of an order of the bankruptcy court to the district court, findings of fact are reviewed for clear error, conclusions of law are reviewed *de novo*, and mixed questions of law and fact are reviewed *de novo*. *Drive Fin. Services, LP v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008); *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999).

## Legal Standards and Analysis

In order to be confirmed, a Chapter 13 plan must satisfy several requirements set forth in 11 U.S.C. § 1325(a) and (b). *In re Stretcher*, 466 B.R. 891, 893 (Bankr. W.D. Tex. 2011).

Among other requirements, the bankruptcy court must determine that "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." Pertinent to this case, disposable income is defined in relevant part as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed[.]" 11 U.S.C. § 1325(b)(1)(A). "Current monthly income," in turn, means the debtor's "average monthly income from all sources" during the six months preceding the filing—an amount that "includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents[.]" *In re Stretcher*, 466 B.R. 891, 895 (Bankr. W.D. Tex. 2011); 11 U.S.C. § 101(10A). The determination of "projected disposable income" is a forward looking calculation that begins with historical data regarding the debtor's monthly income and adjusts that amount according to amounts the debtor is certain or likely to receive during the applicable commitment period. *In re Nowlin*, 576 F.3d 258, 263 (5th Cir. 2009). Appellant argues on appeal, and argued before the Bankruptcy Court, that her full tax refund amount was not disposable income or projected disposable income because it was reasonably necessary to be expended for her support and that or her dependents. Docket no. 6 at 13.

Tax refunds, whether derived from the return of an income tax overpayment or from a refundable tax credit, fall—at least presumptively—within the definition of disposable income, and must be turned over to the Chapter 13 Trustee as provided under Section 4.1 of the district's form plan. *In re Diaz*, 586 B.R. 588, 595-96 (Bankr. W.D. Tex. 2018); *In re Harchar*, 694 F.3d 639, 647 (6th Cir. 2012); *Marshall v. Blake*, 885 F.3d 1065, 1075 (7th Cir. 2018). However,

income tax returns, like any other form of income, may fall outside the statutory definitions of disposable income and projected disposable income to the extent that those amounts are "reasonably necessary to be expended for the maintenance and support of the debtor or a dependent of the debtor." *Marshall*, 885 F.3d at 1080 (quoting 11 U.S.C. § 1325(b)(2) (internal alteration omitted)). The record before the Bankruptcy Court indicated that Appellant sought to retain her tax refund in order to make repairs to the Potomac property—in which she was not living—so that it could be habitable and insurable, which would allow her to either move into it and eliminate her monthly rental expenses, or derive rental income from it. Docket no. 3-3 at 19. However, the record before the Bankruptcy Court also indicated uncertainty regarding whether the tax refund would be sufficienct to cover the cost of all repairs required to make the property habitable and insurable. Docket no. 3-3 at 20-21, 25-26. In light of this record, the Bankruptcy Court did not err in concluding that it was not reasonably necessary for Appellant to retain the entire tax refund in order to make repairs to the Potomac property—particularly in light of the alternative of an increase in Appellant's monthly budget for home improvements or repairs that might allow the same work to proceed. Docket no. 3-3 at 25-26, 35. *Compare, e.g., Marshall*, 885 F.3d 1076 (noting the approach taken by some bankruptcy courts of permitting below-median-income debtors to "prorate[] future expenses that the refund will be spent on over [a] twelve-month period, thus potentially offsetting the tax refund income as long as her additional expenses are reasonably necessary."). In short, Appellant's arguments regarding the necessity of applying the tax refund toward repair costs for the Potomac property were presented to and considered by the Bankruptcy Court, and the Court—albeit somewhat implicitly—determined that retention of the full tax refund amount was not reasonably necessary. The Court finds that this determination was not erroneous, and that the orders of the Bankruptcy Court should therefore be affirmed.

## Conclusion and Order

It is therefore ORDERED that Appellee's Motion to Strike Late Filed Reply Brief of Appellant (docket no. 11) is DENIED, and that Appellant's Nunc Pro Tunc Motion for Extension of Time to File Reply Brief (docket no. 13) is DENIED AS MOOT.

The Court finds that the Bankruptcy Court did not err in denying Appellant's Motion to Retain, denying plan confirmation, and dismissing the case. It is therefore ORDERED that the Orders of the Bankruptcy Court entered on April 5, 2018, and April 20, 2018, are AFFIRMED.

SIGNED this \_\_11\_\_ day of November, 2018.

ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE