**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re*: | § | Bankruptcy No. 18-50242-RBK |
| Gloria Artesia Penn | § | |
| *Debtor*. | § | |
| _____ | § | |
| | § | |
| Gloria Artesia Penn | § | Civil Action No. 5:18-cv-00354-OLG |
| *Appellant*, | § | |
| v. | § | |
| Mary K. Viegelahn, | § | |
| *Appellee*. | § | |

**MOTION TO REQUIRE DEBTOR-APPELLANT TO POST BOND,
OR IN LIEU THEREOF DEPOSIT FUNDS
IN THE REGISTRY OF THE COURT, PENDING APPEAL**

COMES NOW, Mary K. Viegelahn, Chapter 13 Trustee for the Western District of Texas – San Antonio Division and Appellee in the above styled and numbered proceeding who files this Motion to Require Debtor-Appellant to Post Bond, or in Lieu thereof Deposit Funds in the Registry of the Court Pending Appeal. In support thereof, Trustee-Appellee would respectfully show the Court the following:

## STATEMENT OF FACTS

1.  On February 2, 2018, Debtor-Appellant filed in the United States Bankruptcy Court for the Western District of Texas – San Antonio Division a Petition for relief under Chapter 13 of the Bankruptcy Code.  Dist. ECF # 4, Attachment 2, pg. 5.[1]

2.  At the time of the filing of the Petition, the Debtor-Appellant resided at 4306 Springoak St., San Antonio, TX 78219 despite owning real property located 918 Potomac, San Antonio, TX 78202 (hereinafter "Potomac Property"). Dist. ECF #4, Attachment 2, pg. 5.  *See also* Dist. ECF #4, Attachment 2, pg. 27

3.  According to Schedule J, filed on February 20, 2018, the Debtor-Appellant's rent payment for her residency at 4306 Springoak St., San Antonio, TX 78219 is $725.00.  Dist. ECF # 4, Attachment 2, pg. 59

4.  The Debtor-Appellant, on March 30, 2018, filed an Amended Plan (hereinafter referred to as the "Plan."). Dist. ECF #4, Attachment 2, pg. 222-228.

5.  Debtor-Appellant's combined monthly income on Schedule I filed February 20, 2018 totals $4,553.36; and monthly expenses on Schedule J total $3,378.36 resulting in monthly net disposable income of $1,175.00, which is

---

[1] Attachment 2 of Dist. ECF #4 are the individual designations filed by the Trustee-Appellee for the Bankruptcy Record on Appeal.

the amount equivalent to the monthly Plan payment. Dist. ECF #4, Attachment 2, pgs. 57-58. *See also* pg. 222.

6.  The Plan proposes a payment of $1,175.00 to the Trustee-Appellee for a period of sixty months.  Dist. ECF# 4, pgs, 222-228.  The Plan proposes to pay: a) fee to the Chapter 13 Trustee; b) attorney fees of $3,400.00; c) administrative costs of $75.00 to Debtor-Appellant's counsel; d) ongoing mortgage payment to Ovation Services LLC through the Trustee;[2] e) pre-petition mortgage payment arrears to Ovation Services in the amount of $17,210.57; f) a debt to AARCO Transmission & Auto Repair for a 2007 Ford F150 on an estimated amount of $1,600.00; and g) Bexar County in the amount of $5,942.79 for ad valorem taxes assessed for tax years 2015, 2016, 2017 and 2018.[3]  *Id*.

7.  The first payment due under the terms of the Plan, and in accordance with the Code was March 2018.  *See* 11 U.S.C. §1326 (a)(1) ("[T]he debtor shall commence making payments not later than 30 days after the date of the filing of the…order for relief.").

---

[2] The proof of claim, however, was filed by FGMS Holdings, LLC. c/o Ovation Services, LLC. *See* Dist. ECF #4, Attachment 5.   The amount of this claim is $35,642.12 representing amounts owed for tax years 2007, 2008, 2009, 2010, 2011, 2012, 2013, and 2014.  *Id*.
[3] *See also* Proof of Claim filed by Bexar County.  Dist. ECF # 4, Attachment 6.

8.  According to the terms of the Plan as proposed by the Debtor, the total sum of $70,500.00 is required to be paid over the term of the Plan ($1,175.00 x 60 months).  And, as of February 11, 2019 the amount that would be due under the terms of the Plan is $14,100.00 ($1,175.00 x 12 months).

9.  As of February 2019 the Trustee-Appellee only has one payment of $1,175.00 in her possession, which was paid in April 2018.

10. Debtor-Appellant's Plan includes, as a nonstandard provision, the following: "Debtor hereby reserves the right to file relevant motion to retain tax refund should a special need arise, to the extent said potential refund is not disposable income." Dist. ECF #4, Attachment 2, pg. 228.

11. On March 27, 2018 the Debtor-Appellant filed a Motion for an Order Allowing Debtor to Retain 2017 Tax Refund (hereinafter referred to as "Motion to Retain").  Dist. ECF #4, Attachment 2, pg. 130-132.

12. Debtor-Appellant sought retention of the tax refund in the amount of $5,832.00 received after the filing of the Petition for repairs to the nonresidential "Potomac Property".  *Id.*

13. On April 5, 2017 the Bankruptcy Court, after argument of Debtor-Appellant and Trustee-Appellee, denied the Motion to Retain and granted the Debtor-

Appellant's voluntary request to dismiss case (and by default denial of confirmation). Dist. ECF #4, Attachment 2, pg. 251 and pg. 256.[4]

14. Debtor-Appellant filed her Notice of Appeal with the Bankruptcy Court on April 19, 2018 of its Order Denying Motion for Order Allowing Debtor to Retain 2017 Tax Refund and Denial of Confirmation of Debtor's Amended Plan and Dismissal of Chapter 13 case with Order entered April 20, 2018. Dist. ECF #4, Attachment 2, pgs. 252-253. See *also* pgs. 259-260.

15. Debtor-Appellant on appeal requested that: a) the orders of the Bankruptcy Court be reversed; b) Debtor-Appellant's Motion to Retain 2017 Tax Refund be granted; c) the nonstandard provision in the Amended Plan be permissible; and d) the Amended Plan be confirmed.  Dist. ECF #6, Appellant Brief, pg. 29.

16. After submission of briefs, the District Court entered a Memorandum Opinion and Order affirming the orders of the Bankruptcy Court on November 13, 2018. Dist. ECF #14.

17. Debtor-Appellant filed her Notice of Appeal on December 12, 2018 of the District Court's Memorandum Opinion and Order affirming the Bankruptcy Court's orders. Dist. ECF #15.

---

[4] The order denying confirmation and dismissing case, however, was entered April 20, 2018.

18. Upon information and belief, the Debtor-Appellant is no longer residing at 4306 Springoak St., San Antonio, TX 78219.

19. Upon information and belief, the Debtor-Appellant no longer pays rent in the amount of $725.00 per month for residing at 4306 Springoak St., San Antonio, TX 78219.

20. Upon information and belief, repairs have been made to the Potomac Property.

21. Upon information and belief, Debtor-Appellant currently resides at the Potomac Property.

22. Upon information and belief, Debtor-Appellant has made arrangements regarding payment of debt owed to FGMS Holdings, LLC c/o Ovation Services LLC that is secured by the Potomac Property.

23. Upon information and belief, Debtor-Appellant has made arrangements regarding payment of debt owed to Bexar County for ad valorem taxes due on the Potomac Property.

24. Upon information and belief Debtor-Appellant executed on October 25, 2018, while the appeal of the Bankruptcy Court's orders to this Court were pending, a tax lien transfer contract with FGMS Holdings, LLC for tax years 2015,

2016, 2017 and 2018; and recorded on November 2, 2018 in the Official Public eRecords of Bexar County – Document #20180216664.[5]

25.    Pursuant to the Tax Lien Transfer Contract identified above, Debtor-Appellant agreed to pay FGMS Holdings, LLC the amount of $45,139.38, which included the prior indebtedness owed to FGMS Holding, LLC.[6]  See Dist. ECF #4, Attachment 5.

26.    Upon information and belief, Albert Uresti, MP, PCC (Bexar County Tax Assessor-Collector) transferred tax liens on the Potomac Property to FGMS Holdings, LLC for tax years 2015, 2016, 2017, and 2018 in consideration for the amount of $6,816.42 to which a certified statement of transfer of tax liens dated November 29, 2018 was recorded on or about December 17, 2018 in the Official Public eRecords of Bexar County – Document # 20180245555.

27.    Upon information and belief, Debtor-Appellant no longer requires relief under Chapter 13 of the Bankruptcy Code.

## ARGUMENT

28.    The Federal Rules of Appellate Procedure empower district courts to require an appellant to file a bond or provide other security in any form and amount

---

[5]  According to the claim filed by Bexar County and that is provided for payment in the Plan to Bexar County the amount owing as of the date of the petition for tax years 2015, 2016, 2017, and 2018.  *See* Dist. ECF #4, Attachment 6.

[6] *See* n. 2, *supra*.

necessary as a condition to pursuing an appeal. Fed. R. App. P. 7. The district court therefore retains jurisdiction during the pendency of an appeal to issue orders regarding the filing of bonds or providing other security.

29.   The purpose of an appellate bond is "to preserve the status quo while protecting the non-appealing party's rights pending appeal." *In re Poplar Grove Planting and Refining Co., Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979). *See also Asarco LLC v. Americas Mining Corp.*, 419 B.R. 737, 742 (S.D. Tex. 2009). Here, the Trustee-Appellee who exists to preserve the bankruptcy estate for creditors; and who, as representative of the estate, is charged with representing the interests of all creditors. *See In re Countryman*, 432 F.3d 590, 594 (5th Cir. 2005). *See also In re Liles*, 292 B.R. 138, 139 (Bankr. E.D. Tex. 2002).

30.   Generally, an appellant seeks to avoid the effects of a judgment, including but not limited to payment of damages by filing a motion for stay pending appeal. An appellee, however, is not prohibited from requesting the appellant be required to post a bond or some other form of security to protect against nonpayment by the unsuccessful appellant. This case, however, is unique in that the Debtor-Appellant seeks relief that, if she were to prevail on appeal, would require her to pay Trustee-Appellee. Debtor has chosen however to seek relief on appeal without taking action to preserve the bankruptcy estate

(namely Plan payments) for the benefit of creditors. In other words, the Debtor-Appellant has chosen to seek relief to reverse the denial of confirmation without tendering payment to the Trustee-Appellant in accordance with the terms of the Plan. The Debtor-Appellant in effect is asking the Estate and creditors to bear the risk that if she prevails there will a potential loss of $69,325.00 [7] to the Estate and creditors.

31. Because of the unique posture of the case at bar and the particular relief sought by the Debtor-Appellant, an appellate bond in the case would protect the rights of Trustee-Appellee on behalf of the Estate and creditors against nonpayment. The Trustee-Appellee therefore requests that Debtor-Appellant be required to post a bond or some other form of security to protect against nonpayment if the Debtor-Appellant were to succeed on appeal. The rationale for requiring a bond in this case would be to secure the Trustee-Appellee against the possibility of the Debtor's insolvency pending the appeal. *See Asarco*, at 742.

32. An appeal bond in this case is necessary to provide some level of security to the Trustee-Appellee and creditors who have no assurance the Debtor-Appellant has the ability to pay the amount of Plan payments due to date. Nor does the Trustee-Appellee and creditors have assurance that Debtor-Appellant

---

[7] The amount of $1,175.00 x 60 months less the amount of $1,175.00 currently in the Trustee-Appellee's possession. *See also* paragraph 38 below.

has the ability to pay the amount of Plan payments that would be due through the date of the conclusion of the appeal, if the Court of Appeals reverses this Court's Memorandum Opinion and Order and render that an order confirming the Plan be entered.

33. The record on appeal does not contain any evidence that would permit this Court to determine that Debtor-Appellant has the financial ability to consummate the Plan if she were to prevail on appeal. If the Debtor-Appellant is dissipating assets that constitute property of the estate,[8] including net income, this Court should enter order(s) necessary to protect the Trustee-Appellee and creditors in the event the Debtor-Appellant succeeds on the merits of her appeal.

34. Section 1326(a)(1)(B) of the Code requires a debtor to commence plan payments within thirty days of the filing of the petition in the amount proposed by the plan to the trustee. Ordinarily, if the case was not dismissed and confirmation denied upon request of the Debtor-Appellant, the Debtor-Appellant would have been required to tender to the Trustee the amount of $1,175.00 each month. Because the case was dismissed and confirmation denied upon the request of the Debtor-Appellant, she voluntarily ceased

---

[8] Sections 541 and 1306 define property of the estate, which includes but is not limited to all sources income of the Debtor-Appellant. *See* 11 U.S.C. §541. *See also* 11 U.S.C. §1306.

tendering payment to the Trustee. The Debtor-Appellant chose not to resume Plan payments when she chose to appeal the Bankruptcy Court's orders; and now this Court's order.

35. The Debtor-Appellant, however, seeks to reverse the order dismissing, reinstate the case, reverse the order denying confirmation, and have entered an order confirming the Plan. And, as discussed above the Plan requires the payment of $1,175.00 per month, with payments commencing within thirty days of the filing of the Petition, which in this case was March 2018.

36. If Debtor-Appellant prevails on appeal and the Plan is confirmed the Debtor-Appellant has an obligation to pay all payments due to the Trustee in accordance with the Plan she seeks to have confirmed for distribution to creditors in accordance with the terms of the Plan filed by the Debtor-Appellant.

37. As indicated above, the Plan in this case proposes a payment of $1,175.00 per month. As of the date of this Motion, twelve months of plan payments would be due if the Plan were confirmed. To be clear, as of the date of this Motion, the amount of $14,100.00 is due. The amount due will continue to increase as each month passes; and as of the date of this Motion the Trustee is in possession of only one payment in the amount of $1,175.00.

38. To provide assurances to the Debtor-Appellant's creditors regarding payments the Debtor-Appellant is obligated to make under the Plan if she were to prevail, the Trustee-Appellee requests this Court require the Debtor-Appellant to post a bond equivalent to the amount of the Plan payments to be paid during the term of the Plan (sixty months) less the one payment currently in the Trustee-Appellee's possession paid by the Debtor-Appellant.  As such, the Trustee requests this Court require the Debtor-Appellant to post a bond in the amount of $69,325.00 ($1,175.00 x 60 months less the one payment in the Trustee-Appellee's possession).

39. In lieu of posting a bond, the Trustee requests this Court require the Debtor-Appellant to turn over the amount of $12,925.00 that would be due as of the date of this Motion and deposit the same with the Registry of the Court.  This amount represents $1,175.00 due each month over the past twelve months less the one payment currently in the Trustee-Appellee's possession.  The Trustee-Appellant further requests, should the latter be the method of payment of security pending appeal, that Debtor-Appellant be required to deposit each month thereafter an amount equivalent to the Plan payment of $1,175.00 pending conclusion of the appeal until the equivalent of fifty-nine payments have been made for a total of sixty.

40. The appeal bond, or deposit of funds in the Registry of the Court equivalent to the Plan payments due and that will come due should the Debtor-Appellant prevail ensures that money will be available to distribute such funds to Debtor-Appellant's creditors at the conclusion of the appellate process, which could be several more years.

41. The Trustee-Appellant has concerns about the ability to collect from the Debtor-Appellant and her intent to perform the terms of the Plan particularly given her choice to not tender payment to the Trustee pending appeal. The Trustee-Appellee has concerns that the Debtor-Appellant will not be able to financially proceed in bankruptcy; and that she seeks this appeal for the sole purpose of obtaining an advisory opinion, which is prohibited.

42. To the extent that the Debtor-Appellant: a) cannot consummate the plan if she were to prevail; b) intends to not pay if she were to prevail; or c) believes that she is not required to pay any sums of money if she were to prevail on appeal the issues presented on appeal are moot as no effective relief could be granted as the Debtor-Appellant will not, or cannot, abide by the terms of her own Plan to pay the sum of $1,175.00 per month due to date and each month thereafter.

43. Without a bond, or some other form of security such as payment of funds to the Registry of the Court to ensure that Debtor-Appellant can fulfill the terms

of the Plan she seeks to confirm, the issuance of an opinion by the Court of Appeals in her favor would be nothing more than advisory in nature. If Debtor-Appellant cannot consummate the terms of the Plan if confirmed as a result of prevailing on appeal, the issues presented on appeal to the Fifth Circuit are moot.

44. Further, and without waiving the foregoing argument regarding Debtor-Appellant not tendering Plan payments to the Trustee pending appeal considering that which seeks, the execution of a transfer lien contract by Debtor-Appellant that resulted in payment of amounts due and owing to Bexar County for tax years 2015-2018 and that has modified the loan agreement with FGMS Holdings, LLC in place at time of the filing of Petition has an effect on the outcome of this case.

45. The Plan that Debtor-Appellant seeks to have confirmed currently provides for payment to: a) FGMS Holdings, LLC on its ongoing mortgage payment and pre-petition mortgage arrears; and b) Bexar County. These provisions for payment to FGMS Holdings, LLC and Bexar County, based on Debtor-Appellant's actions post appeal, can no longer be made. The ongoing mortgage payment to FGMS Holdings, LLC presumptively has changed as a new contract has been executed post appeal; the pre-petition arrears presumptively cease to exist as a result of the execution of a new contract post

appeal, which ordinarily subsumes an existing arrearage; and the liability to Bexar County for ad valorem taxes has been paid as a result of the execution of the new contract with FGMS Holdings, LLC.  Debtor-Appellant, by her own actions, now has a Plan that cannot be consummated as proposed and filed because it includes payment to FGMS Holdings, LLC and Bexar County – creditors who are no longer entitled to payment in accordance with the terms of the Plan.

46.    In this case Debtor-Appellant has taken action to reorganize her financial affairs in direct contradiction to the terms of her Plan of reorganization she seeks to have confirmed on appeal.  A live controversy must persist throughout all stages of litigation and not merely at the time an appeal is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  Based on Debtor-Appellant's actions post appeal that materially change how obligations in the Plan should be treated (and aside from other arguments made on appeal) no effective or meaningful relief may be granted to the Debtor-Appellant at this stage of the proceedings regarding confirmation of her Plan.

47.    To be clear, if the Debtor-Appellant cannot consummate the terms of her Plan as filed, whether it be because of her inability to pay sums due or because she has taken action that affects the terms of the Plan to pay certain creditors, no

effective relief can be granted to her.  And, if there is no effective relief that can be afforded to parties on appeal, or there is no case or controversy, then an appellate court should not render any decisions on the issues presented to it.

48.    The payment of a bond or deposit of funds with the Registry of the Court protects the rights of all parties in interest.  It protects the Debtor-Appellant in so far as it would allow the Plan to be current should she prevail.  It protects the Trustee-Appellee, and the creditors she represents, in so far as it would guarantee payment under the Plan proposed by the Debtor-Appellant she seeks to have confirmed on appeal and that pursuant to the Code is required to be paid.

49.    This Court should not permit the Debtor to proceed on appeal without just assurance that she will be able to consummate the Plan, more specifically an order to pay the Trustee-Appellee if the Court of Appeals reversed and rendered the District Court's opinion affirming the Bankruptcy Court's order denying confirmation of the Plan.

## CONCLUSION

50.    For the foregoing reasons, Trustee-Appellee requests this Court order Debtor-Appellant to: a) post a bond in an amount no less than $69,325.00 within fourteen days of the entry of the order; or b) deposit with the Registry of the

Court the sum of $12,925.00 for the amount in Plan payments due through February 2019 within fourteen days of the entry of the order plus deposit the sum of $1,175.00 on or before the 5th day of each succeeding month commencing March 2018 pending the conclusion of the appeal.

51. If this Court finds that an appellate bond is warranted and orders the Debtor to post a bond, or in lieu thereof, deposit funds with the Registry of the Court that amount due as of the date of this Motion and each month thereafter, the Trustee-Appellant requests a deadline be imposed to take such action. And, if Debtor-Appellant fails to abide by the terms of the order requiring a bond or deposit funds within the proscribed time that a notice of dismissal of appeal in accordance with the Rules be filed within a certain period of time.

Dated: February 12, 2019                     Respectfully Submitted,

/s/ Vanessa Guerrero
Vanessa Guerrero, TX - 24040788
   *Counsel of Record*

David Van Zyl, MI - P39875
Marshall Armstrong, TX - 24027037
**Mary K. Viegelahn**
**Standing Chapter 13 Trustee**

10500 Heritage Blvd., Ste. 201
San Antonio, Texas 78216
Telephone: (210) 824-1460
Telecopier: (210) 824-1328
vguerrero@sach13.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re*: | § | Bankruptcy No. 18-50242-RBK |
| Gloria Artesia Penn | § | |
|     *Debtor*. | § | |
| _____ | § | |
| | § | |
| Gloria Artesia Penn | § | Civil Action No. 5:18-cv-00354-OLG |
|     *Appellant*, | § | |
| v. | § | |
| Mary K. Viegelahn, | § | |
|     *Appellee*. | § | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that the above and foregoing Appellee's Motion to Require Debtor-Appellant to Post Bond, or in lieu thereof, Deposit Funds in the Registry Pending Appeal was filed electronically with the Court via the CM/ECF system, which notices all interested parties using the CM/ECF system. In addition, the undersigned certifies the above and foregoing Motion was served via CM/ECF or mailed via first class regular mail on this 12th day of February 2019 to the following parties:

Joris Robert Vanhemelrijck, Attorney for Debtor
Vanhemelrijck Law Offices, P.C.
1100 N.W. Loop 410, Ste. 215
San Antonio, TX 78213

Jessica Hanzlik, Attorney for Debtor
Vanhemelrijck Law Offices, P.C.
1100 N.W. Loop 410, Ste. 215
San Antonio, TX 78213

Gloria Artesia Penn, Debtor - Appellant
4306 Springoak St.
San Antonio, TX 78219

Gloria Artesia Penn, Debtor - Appellant
918 Potomac
San Antonio, TX 78202

Date:  February 12, 2019

/s/ Vanessa Guerrero
Vanessa Guerrero, TX - 24040788
*Counsel of Record*

David Van Zyl, MI - P39875
Marshall Armstrong, TX - 24027037
**Mary K. Viegelahn**
**Standing Chapter 13 Trustee**

10500 Heritage Blvd., Ste. 201
San Antonio, Texas 78216
Telephone: (210) 824-1460
Telecopier: (210) 824-1328
vguerrero@sach13.com